LEGAULT, Appellant, vs. MALACKER, Respondent.

*May 17—June 20, 1917.*

*Appeal: Law of the case: Overruling general demurrer: Right of recovery: Animals: Injury by rabid dog: Liability: Scienter: Negligence.*

1. A decision in this court overruling a general demurrer to the complaint in an action for damages becomes the law of the case and, whether right or wrong, settles the question of plaintiff's right to recover damages in case he proves the facts alleged.
2. Thus where, upon a former appeal in an action to recover damages for the death of his son caused by the bite of a dog, the complaint was sustained as against a general demurrer, that de-

cision is the law of the case, even though the only question then argued was as to the necessity of alleging *scienter* and *it now seems* that (but for such decision) the action could, under sec. 4256, Stats., be maintained only by the personal representative of the deceased.

3. The general rule that, under sec. 1620, Stats., allegation and proof of *scienter* are unnecessary in an action for injury by a dog, so that upon proof that a person has been bitten by a dog a *prima facie* case of liability is made against the owner or keeper, does not apply to the case of a dog suffering from rabies. Liability in such a case must depend upon defendant's misconduct or negligence. MARSHALL, KERWIN, and ESCHWEILER, JJ., dissent.

APPEAL from a judgment of the circuit court for Marinette county: W. B. QUINLAN, Circuit Judge. *Reversed.*

A general demurrer to the complaint was overruled by this court upon a former appeal in the present action. 156 Wis. 507, 145 N. W. 1081. After the return of the case to the circuit court it was brought to trial before a jury. The plaintiff's proof tended to show that he was the father of Gregory Legault, a boy nine years of age, who was bitten by a dog kept by the defendant, and thereafter died. Proof was also made of medical and funeral charges. A motion for nonsuit was made on two grounds: (1) that, the action being for damages resulting from death, it must be brought by an administrator under sec. 4256, Stats.; and (2) that no negligence was shown on the part of the defendant. The motion was sustained on the first ground, and the plaintiff appeals.

For the appellant the cause was submitted on the brief of *Lehr & Kiefer* and *Michael Levin* of Milwaukee, attorneys, and *Michael Levin,* of counsel.

For the respondent there was a brief by *Eastman & Goldman,* attorneys, and *H. R. Goldman,* of counsel, all of Marinette, and oral argument by *H. R. Goldman.*

WINSLOW, C. J. The complaint in the action is the same as it was when the case was before us upon a general demurrer. The damages which it seeks to recover are the expenses

of the medical treatment and the value of the boy's services during minority and which have been lost by reason of his death. No claim is made for the value of his services during his illness. The burden of the complaint is the recovery of death damages pure and simple under what is familiarly known as Lord Campbell's Act. Secs. 4255, 4256, Stats.

This complaint was sustained by this court against general demurrer upon the former appeal. This means, of course, that it was deliberately held that the complaint stated a good cause of action in favor of the plaintiff. It meant also that this question is settled for this case whether we now deem the decision right or wrong. It has become the law of the case and is not to be departed from. *Ellis v. N. P. R. Co.* 80 Wis. 459, 50 N. W. 397; *Schoenleber v. Burkhardt,* 94 Wis. 575, 69 N. W. 343.

It is true that the only question debated upon the former appeal was whether it was necessary to allege *scienter,* but the question whether the plaintiff shows himself to have any right to recover damages is directly and necessarily involved in every case of general demurrer to a complaint for damages, and the decision upon such demurrer sustaining the complaint necessarily decides the question of the plaintiff's right to recover damages in case he proves the facts therein stated.

Were this prior decision not in the case, it seems that, under the provisions of sec. 4256, *supra,* an action to recover death damages in such a case as this could only be brought by the administrator of the boy's estate. That section provides that such an action should be brought by the personal representative of the deceased, except that in case there be no cause of action in favor of the estate of the deceased, and the surviving persons entitled to the recovery be the husband, widow, or parents, suit may be brought directly in his, her, or their name or names. The present case does not come within the proviso because it appears that the deceased was

ill for several weeks and hence there would be an action in favor of his estate to recover for his pain and suffering.

The former decision settles the law for this case, but is not to be understood as settling the law for other cases upon this question.

The defendant argues, however, that even if this proposition be conceded, still the judgment should be sustained because the evidence shows that the dog had hydrophobia and that there can be no recovery in such case unless it also appears that the defendant knew that the dog was rabid and was negligent in not keeping him confined.

Upon the former appeal we held that it was unnecessary to allege *scienter,* and that an allegation that a dog attacked a person who was where he might lawfully be and in the exercise of care was a sufficient allegation that the dog was vicious.

This is of course the law of the case on this point and we have no doubt of its being correct as a legal proposition.

In the subsequent case of *Harris v. Hoyt,* 161 Wis. 498, 154 N. W. 842, we held that while the statute abolishes the necessity of alleging and proving *scienter,* it does not impose an absolute liability. This also seems to us to be good law.

The logical result of these holdings is that on proof of the fact that a person has been bitten by a dog a *prima facie* case of liability is made against the owner or keeper; this *prima facie* case may be defeated if it appear either by the plaintiff's evidence or by evidence introduced by the defendant that the plaintiff brought or helped to bring the dog's attack upon himself by provoking the dog, by lack of ordinary care, or by trespass of such a nature as is calculated to induce an attack.

This we think to be correct as a general rule; but the question now presented and argued is whether it applies to the case of a dog suffering from rabies, as the evidence shows was the case here.

This question was met and decided by the supreme court of Michigan in the early case of *Elliott v. Herz,* 29 Mich. 202, where a statute in similar terms was held not to apply to the case of a rabid dog. Judge Cooley said in that case that the statute

"manifestly refers to a vicious and destructive habit, from indulgence in which the mischief has resulted; and is inapplicable to the case of a rabid dog. What he does in his frenzy is wholly involuntary, and there is no such thing as his being accustomed to the mischief of madness, for the frenzy itself exists but once, and terminates his life. The phraseology of the statute is not suited to such a case, and it seems to me reasonable to suppose that if the legislature had purposed to give a remedy against the owner of a rabid dog for mischief done by him, especially if it was to be punitory in its nature, such remedy would have been given in more distinct terms, and been made to depend upon the owner's misconduct or negligence."

This seems to us to be good law and good sense. It finds support in *Van Etten v. Noyes,* 128 App. Div. 406, 112 N. Y. Supp. 888.

In the present case it seems that the dog which bit the deceased was rabid because it is proven that the deceased died from hydrophobia resulting from the bite. It does not appear, however, whether the dog became rabid suddenly or whether the condition had existed for some time so that the defendant either knew or had good reason to apprehend his condition. In the former case there would be no liability under the principle of the *Elliott Case,* but in the latter case there might be liability if the defendant, with such knowledge or means of knowledge, negligently failed to restrain or destroy him.

*By the Court.*—Judgment reversed, and action remanded for a new trial.

Marshall, J. (*dissenting*). I dissent from the opinion of the court that the statutory liability of the owner of a dog

for injuries by it to persons or property does not apply to mad dogs. The statute abrogates the common-law rule and does not make any exception. It was competent to make the law cover all cases and, if its language is given full effect, it does so.

In my opinion, the court should not judicially amend the statute. The better way is to take a law, when constitutional and plain, just as it is given and let the legislature have the responsibility for the result. I think that is the logic of *Legault v. Malacker,* 156 Wis. 507, 145 N. W. 1081. It may be that, if a person, by his own wrongful conduct, causes a dog to injure him, he is not entitled to the protection of the statute; but that question is not before us.

If other jurisdictions, in dealing with statutes like ours, have minimized their effect by judicially reading out of them an exception to fit such facts as we have here, I am not inclined to follow them. The experience of years has led me, more and more, to appreciate that the unambiguous words of the lawmaking power, within constitutional limitations, should be administered according to their plain, ordinary meaning.

As suggested by Chief Justice GRAVES in *Elliott v. Herz,* 29 Mich. 202, 204, the liability of dogs to go mad, in many states, was a common, if not the principal, moving cause of such legislation as ours, which rebuts the idea that the legislature here did not intend to include such cases. *Woolf v. Chalker,* 31 Conn. 121, 133; *Blair v. Forehand,* 100 Mass. 136.

The history of restrictive dog laws and the reasoning found in the cases referred to, are quite convincing that the presumption to be indulged in should be rather in favor of a legislative purpose to protect against dangers from mad dogs than one not to include such dangers. As said by Chief Justice GRAVES, "The law" "is so distinct and positive, and its fundamental policy seems so evident, that" I cannot, "with-

out invading the province of the legislature, assume that the condition of the dog takes the case wholly or partly out of the act. To do that would be to repeal the law in respect to the most dangerous description of dogs."

The idea that it should no more be presumed that a law, absolute in terms like the one in question, was intended to include insane dogs, than a law in such terms as to offenses by human beings was intended to include such, does not appeal to me. From time immemorial the latter have been held incapable of offending against the criminal law, while mad dogs have been regarded as proper subjects for summary destruction, with or without legislative authority, and the keeping of dogs, unless under such conditions as to prevent injuries therefrom, has been often prohibited and there have been instances of prohibition under all circumstances. Danger from mad dogs has been one of the most common subjects of legislative prevention. That being the greatest danger from such animals, as before indicated, it seems illogical to reason that, by general language, as in our statute, only the lesser dangers were intended, and to support it by the charity of the law in respect to insane human beings.

The only judicial authority which can be found, so far as I am advised, contrary to the foregoing, is the opinion of two justices out of four in *Elliott v. Herz, supra.* The dissenting opinion by Chief Justice GRAVES seems much more logical. The statute there was different from ours in that it provided for double damages. The court did not support its views by authority. They do not seem to have been approved in any subsequent case. The reasoning in *Jenkinson v. Coggins,* 123 Mich. 7, 81 N. W. 974, rather impresses me that if the question were presented anew, the doctrine of the *Elliott Case* would be overruled. It is cited in some late text-books with *Van Etten v. Noyes,* 128 App. Div. 406, 112 N. Y. Supp. 888, as holding that there is no liability for the

acts of a dog which suddenly turns mad; but the latter case did not turn on a statutory regulation and so is not in point.

KERWIN and ESCHWEILER, JJ., concur in the above opinion by Justice MARSHALL.